UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **LORI ANN F. BAGWELL,** | } |
| Plaintiff, | } |
| vs. | } CASE NO. 3:08-cv-1432-SLB |
| **MICHAEL J. ASTRUE,**<br>**Commissioner of Social Security,** | } |
| Defendant. | } |

## MEMORANDUM OPINION

Pursuant to the provisions of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), plaintiff Lori Ann F. Bagwell ("Bagwell") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits. Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL BACKGROUND

Plaintiff Bagwell applied for disability insurance benefits and Supplemental Security Income ("SSI") on August 29, 2002, due to fibromyalgia and affective/mood disorders, alleging an inability to work since January 7, 2000. These applications were denied and Bagwell sought administrative remedies. (R. at 39.) On May 27, 2004, Administrative Law Judge ("ALJ") J. Dennis Reap issued a partially favorable decision, finding that Bagwell was disabled from January 7, 2000 through June 1, 2003. (R. at 26-

37.) Bagwell appealed this decision to the Appeals Council, challenging the closing of her period of disability. The Appeals Council granted her request for review, and, on December 8, 2005, vacated ALJ Reap's decision and remanded the case for further proceedings. (R. 286-289.) On remand, ALJ Randell C. Stout conducted a hearing on August 22, 2006. (R. at 548-560.) Bagwell requested an amended closed period of disability from January 7, 2000 to March 30, 2006, the date on which she returned to work. (R. at 550-551.) ALJ Stout reached a determination that Bagwell was not disabled at any time during the period of January 7, 2000 through the date of his decision, which issued on November 17, 2006. (R. at 18-25.) On July 3, 2008, the Appeals Council denied Bagwell's request for review of this decision, (R. at 6-90); thus, pursuant to 42 U.S.C. § 405(g), Judge Stout's decision became the final order of the Commissioner. Bagwell filed this action for judicial review, and argues that the decision by ALJ Stout contains legal errors and is not supported by substantial evidence. (Doc. 10, p. 5.)[1]

## II. FACTUAL BACKGROUND

Plaintiff Bagwell was born on February 2, 1967; she has completed high school, and has, at two different times, enrolled at a two-year college, although she has not completed a degree program. (R. at 528.) In 2004, at the time of her first hearing, Bagwell was unemployed, having been laid off from her position as an administrative

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record. Reference to the record on appeal is denoted by: ["R. at ___"].

2

sales assistant at American Homestar in April, 1999, due to a plant closing. (R. at 98-99, 537.) Bagwell testified that pain throughout her body, which is sometimes regionally localized and, at other times, all over, affects her ability to work. (R. at 528.) She stated that she has no pain free days, and, on a pain scale of ten, described her good days as a "four or five," and her bad days as a "nine." (R. at 528, 531-32.) Bagwell testified that she could sit for as little as fifteen minutes, and up to one-and-a-half hours, and that, at times, she experiences numbness and tingling in her legs that necessitates her use of a cane or the side of a wall to keep her balance. (R. at 529-30.) She estimated that she could stand behind a counter for about fifteen minutes, and stated that the pain affects her ability to walk. (R. at 530.) She testified that she requires assistance from her daughter, or husband, to carry groceries, because it is very hard for her to lift anything, and she is prone to drop items when experiencing numbness in her hands. (R. at 530-31.) Bagwell described being unable to complete household chores on her bad days, and added that the pain affects her ability to cope with a typical "day to day crisis." (R. at 533-34.) Bagwell stated that she did not sleep well at night. (R. at 534.) She also described being forgetful, unable to focus, and added that her lack of concentration made it difficult to complete tasks. (R. at 534-35.) Bagwell denied having any side effects from the medications prescribed for her fibromyalgia. (R. at 529.) She testified that she is usually able to drive her daughter to school, a fifteen mile round-trip. (R. at 536.)

Bagwell was first diagnosed with fibromyalgia in 2000 by Dr. Yates. (R. at 144-147.) The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

Bagwell returned to work in March, 2006 at a stainless steel scrap yard. (R. at 551.) Her job entails manning a customer window and processing truck tickets at the scales. Bagwell works from a seated position on a chair that has three bed pillows on it; she is able to recline, or lean forward on her desk, or prop up her feet, as needed. (R. at 556.)

At the 2006 hearing conducted by ALJ Stout, vocational expert Thomas M. Elliott testified that Bagwell's past relevant work was at the light exertion level, and at the low end of semi-skilled work. (R. at 553.) Mr. Elliott opined that based upon Dr. Long's 2004 assessment, in particular noting Bagwell's lack of functional use of her extremities secondary to pain, and considering Bagwell's age and experience, she would be unable to resume her past relevant work. (R. at 558.) Soon after the 2006 hearing, Bagwell provided ALJ Stout with the Residual Functional Capacity Questionnaire completed by treating physician Jeffrey W. Long, M.D. (R. at 558-59, 473-77.) On the assessment form, dated August 22, 2006,[2] Dr. Long indicated that Bagwell's fibromyalgia would limit her ability to perform work related activities. (R. at 473-77.)

---

[2] Dr. Long's RFC assessment was submitted on August 25, 2006. (R. at 473.)

### III.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied.  42 U.S.C § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  Substantial evidence is something more than a mere scintilla, but less than a preponderance.  *Dryer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  "If the Commissioner's decision is supported by substantial evidence, this court must affirm, even if the proof preponderates against it."  *Id*.  The court may not reweigh the evidence or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision.  *Id.*

### IV.  DISCUSSION

**a. Five-Step Evaluation**

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for disability benefits or SSI.[3]  See 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The specific steps in this process are as follows:

---

[3] "Disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).
   An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A), 1382c (a)(3)(B).

(1)  The Commissioner must first determine whether the claimant satisfies his burden of coming forward with proof that he is not engaged in "substantial gainful activity."  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5(1987).  If the claimant is working, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or age, education and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).

(2)  If the claimant is not engaged in "substantial gainful activity," the Commissioner must determine whether the claimant suffers from a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).[4]  Thus, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments.  *Yuckert*, 482 U.S. at 146 n.5; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

(3)  If the claimant has severe impairment, the Commissioner must determine whether the claimant's impairment meets the durational requirement and is equivalent to any one of the number of listed requirements that the Commissioner acknowledges are so severe as to prevent the claimant from performing substantial gainful activity.  See 20 C.F.R. pt. 404, subpt.P, app. 1.  If the claimant's impairment meets or equals an impairment listed in the regulations, the Commissioner must find the claimant disabled,

---

[4]The regulations provide: "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience."  20 C.F.R. §§ 404.1520(c), 416.920(c).

regardless of the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

(4) If the impairment does not meet one of the listed impairments, and therefore, is not conclusively presumed to be disabling, the Commissioner must review the claimant's residual functional capacity ("RFC"), along with the physical and mental demands of the claimant's prior work experience, to determine whether the claimant is capable of performing work he has performed in the past. If the claimant is still capable of performing the kind of work that he has done in the past, the Commissioner will not find the claimant disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). As with elements one through three, the claimant bears the burden of establishing that the impairment prevents him from performing his past work. *Yuckert*, 482 U.S. at 146 n.5.

(5) Finally, if the claimant cannot do the kind of work that he performed in the past, the Commissioner must review the claimant's RFC and his age, education, and work experience to determine whether the claimant is capable of performing any other work which exists in the national economy. If the claimant is not capable of performing any other jobs in the economy, then the Commissioner must find that the claimant is disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). Unlike elements one through four, however, the Commissioner bears the burden of establishing that there are other jobs in the national economy that the claimant is capable of performing. *Yuckert*, 482 U.S. at 146 n.5; *Chester*, 792 F.2d at 131.

Applying the steps of the sequential evaluation, ALJ Stout found that Bagwell had not engaged in substantial gainful activity from January 7, 2000 to March 30, 2006. (R. at 21.) The ALJ determined that Bagwell's impairments – fibromyalgia, radiculopathy, anxiety, and depression – were "severe;" however, none met or medically equaled, either singly or in combination, one of the impairments listed in Appendix I, Subpart P, Regulation No.4. (*Id.*) The ALJ did not consider Bagwell's psychological impairments to result in more than mild restrictions, or limitations, related to her daily activities, social functioning, or ability to concentrate and maintain pace. (R. at 21.) ALJ Stout discounted the opinion of Bagwell's treating physician, Dr Long, and gave greater weight to the opinion of neurologist Eston G. Norwood, M.D. (R. at 24.) Addressing Bagwell's allegations of pain and limitations, ALJ Stout concluded that the medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Bagwell's "statements regarding intensity, persistence, and limiting effects of her symptoms were not entirely credible." (R. at 22.)

ALJ Stout determined that Bagwell retained the residual functional capacity to perform a full range of light work, which involves lifting no more than 20 pounds at a time, and frequently lifting or carrying items weighing up to ten pounds. (R. at 21.) Absent an inability to sit for long periods of time, or limitations due to loss of fine dexterity, ability to perform light work is consistent with ability to perform sedentary work as well. (*Id.*) At step four, ALJ Stout concluded that Bagwell could return to her past relevant work as a secretary, bookkeeping clerk, data processing clerk, or a general

office clerk. (R. at 24.) Therefore, the ALJ found that Bagwell was not under a disability at any time during the closed period of January 7, 2000 through March 30, 2006.[5] (*Id.*)

Bagwell contends that ALJ Stout: 1) failed to accord appropriate weight to the opinion of treating physician Jeffrey W. Long, M.D., and 2) improperly found that her allegations of pain were not fully credible. (Doc. 10.)

**b. Medical Opinions**

It is the ALJ's responsibility to resolve conflicting evidence and to make credibility determinations, and such findings are not to be disturbed unless they are "patently wrong." *Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984). "In assessing the medical evidence in [a] case, the ALJ [is] required to state with particularity the weight he gave the different medical opinions and the reasons therefor." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). A treating physician's opinion is entitled to substantial weight in the Commissioner's determination of disability. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1990). However, the ALJ may reject or discount a treating physician's opinion if the record evidence supports such a finding. *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990); *see also Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) (holding that a treating physician's opinion may be disregarded if it is unsupported by objective medical evidence or is merely conclusory).

---

[5] ALJ Stout stated that Bagwell had not been under a disability from January 7, 2000 through the date of his decision, November 17, 2006. (R. at 25.)

9

Generally, opinions from treating sources are given more weight since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal, picture of the claimant's impairments. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, a treating source opinion on the nature and severity of an individual's impairment must be well-supported by clinical and laboratory findings and consistent with other evidence to be given controlling weight. *Id.* Also, a medical source opinion about whether an individual is "disabled" or "unable to work" can never be entitled to controlling weight or given special significance because this is an administrative finding dispositive of the case and, as such, is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p, 1996 WL 374183, *5 (S.S.A.); *Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir. 1986) (physician's statement that claimant is disabled is not dispositive of the issue of disability, but must be considered).

The Eleventh Circuit has found "good cause" for discounting a treating physician's opinion when the opinion was not supported by the evidence, or when the opinion was conclusory or inconsistent with the physician's own medical records. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159-1160 (11th Cir. 2004); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (concluding that the ALJ's determination that treating physician's opinion should be given little weight was supported by substantial evidence where the ALJ articulated several reasons for such determination, among them conflicting claimant testimony).

10

In this case, plaintiff's treating physician, Dr. Long, submitted two medical source statements. The first, a letter, dated March 15, 2004, relates that Bagwell had classic symptoms of fibromyalgia with fourteen tender points, anteriorly and posteriorly combined, and was unable to work due to constant pain and an inability to use her extremities secondary to spasm pain and fatigue. (R. at 251.) Dr. Long further noted that the diagnosis of fibromyalgia had been confirmed by two rheumatologists, Dr. Ali and Dr. Thomas. (*Id.*) The second source statement is in the form of a Fibromyalgia Residual Functional Capacities Questionnaire ("RFC"), completed on August 22, 2006, in which Dr. Long indicated that Bagwell had moderate to severe pain daily, she was incapable of even "low stress" jobs, and her pain compromised the attention and concentration needed to perform even simple work tasks. (R. at 473-477.) He opined that Bagwell could stand for 15 minutes at a time for a total of 2 hours a day, and sit for 30 minutes to one hour at a time for a total of 4 hours a day. (*Id.*) Dr. Long indicated that Bagwell's symptoms included multiple tender points, non-restorative sleep, chronic fatigue, muscle weakness, and daily moderate to severe pain. (*Id.*)

ALJ Stout accorded little weight to those opinions. (R. at 23-24.) The court is of the opinion that ALJ Stout properly considered Dr. Long's assessments, and his rejection of them is supported by substantial evidence.

ALJ Stout found that Dr. Long's opinion was not supported by his treatment or objective findings on examination. (R. at 24.) The ALJ noted that Dr. Long's treatment records did not document the severity of pain, or a level of treatment consistent with

11

disabling impairments, and merely provided findings sufficient to render a diagnosis but not to quantify severity. (R. at 23.) The ALJ concluded that objective findings showed no more than moderate limitations. (R. at 24.)

ALJ Stout noted that, during the period of 2004 to 2006, Dr. Long observed and prescribed medications for the treatment of Bagwell's fibromyalgia. (R. at 23.) On August 22, 2006, Dr. Long opined in his RFC assessment that Bagwell would have "significant limitations in her ability to sustain work activity for an 8 hour workday," and that she would miss work, due to her impairment, more that four days in each month. (R. at 23.) ALJ Stout found that the RFC assessment was not supported by the evidence and, in fact, was inconsistent with the evidence because Bagwell had returned to work in March 2006, over four months prior to the report. (*Id.*) ALJ Stout determined that this inconsistency "impact[ed] the credibility of Dr. Long's opinion of August 2006 regarding [Bagwell's] limitations." (R. at 24.)

In contrast, ALJ Stout found Dr. Norwood's neurological evaluation consistent with Bagwell's ability to return to work and, thus gave greater weight to his opinion. (*Id.*) Dr. Norwood examined Bagwell in April 2006, and reported that she had good range of motion and normal strength in her arms and legs. (*Id.*) He opined that she had no neurological impairments related to her ability to perform work related activities, including standing, sitting, walking, and lifting. (*Id.*)

Bagwell argues that ALJ Stout's determination – that Dr. Long's own treatment records do not support his opinion and do not contain objective findings – is without

12

merit and "demonstrates a pervasive misunderstanding about both the diagnosis and symptoms of fibromyalgia." (Doc. 10, p. 7.) As support, Bagwell cites the Deputy Commissioner's Memorandum,[6] which states that fibromyalgia is established by a clinical diagnosis arrived at through the identification and palpation of multiple tender points. (*Id.*) Bagwell also represents that, in *Stewart v. Apfel*,[7] the view that fibromyalgia is a clinical diagnosis prompted the Eleventh Circuit to place importance on the treating physician's opinion. *Id.*, No. 99-6132, 245 F.3d 793, 2000 U.S. App. LEXIS 33214 (11th Cir. 2000) (unpublished decision). Thus, Bagwell concludes that ALJ Stout erred in his finding of no disability. The court disagrees.

The court acknowledges the Eleventh Circuit's recognition that "fibromyalgia 'often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms,' and that the 'hallmark' of fibromyalgia is therefore 'a lack of objective evidence.'" *Somogy v. Commissioner of Social Security*, No. 09-12067, 2010 WL 529297, at *7 (11th Cir. Feb. 16, 2010) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). "The lack of objective clinical findings is, at least in the case of fibromyalgia, therefore insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations." *Id.* (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 105-108 (2d Cir. 2003).

---

[6]Memorandum from the Deputy Commissioner for Disability and Social Security Programs to ALJ Verrell L. Dethloff, (May 11, 1998) (contained in the record at pages 312-315).

[7] A copy of *Stewart* is contained in the record at pages 303-311.

Nevertheless, in this case, ALJ Stout rejected Dr. Long's opinion after recognizing inconsistencies in the physician's records and his RFC, completed after Bagwell's return to work. Also, while the ALJ found fibromyalgia is a severe medically determinable impairment, (R. at 21), the mere existence of an impairment does not reveal the extent to which the impairment limits Bagwell's ability to work. *Moore*, 405 F.3d at 1213 n.6 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (noting that the severity of a disability "must be measured in terms of its effect upon the ability to work")). The ALJ found Dr. Long's records to be lacking in such quantitative measurement. Thus, ALJ Stout adequately articulated specific justification for discounting the treating physician's opinion.

Further, Bagwell's reliance on *Stewart*, is unavailing. In *Peters v. Astrue*, the Eleventh Circuit distinguished *Stewart*, noting that "in *Stewart* there was no other medical evidence that contradicted the treating physician's diagnosis of fibromyalgia." *Peters v. Astrue*, 232 Fed. Appx. 866, 872 (11th Cir. 2007). Here, as in *Peters*, there exists objective evidence that was consistent with the ALJ's conclusions. *Id.* The Eleventh Circuit also discussed *Stewart* in *Moore v. Barnhart*, and there, upheld the ALJ's rejection of the treating physician's opinion where the ALJ articulated specific reasons for doing so. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (noting, as in *Stewart,* the "lack of collaborative findings of impairment").

In sum, ALJ Stout found Dr. Long's opinion was not supported by his treatment or objective findings on examination, was inconsistent with the symptoms and limitations

14

reported by Plaintiff, and was contradicted by an April 2006 report from the Commissioner's examining neurologist, Dr. Norwood. (Tr. 23-24). Furthermore, Dr. Long's August 2006 RFC assessment was contradicted by Bagwell's return to work over four months earlier. The ALJ articulated sufficient reasons, that were supported by substantial evidence, for rejecting Dr. Long's Opinion. Accordingly, there was "good cause" for giving the opinion of Dr. Long little weight. *Crawford*, 363 F.3d at 1159-1160.

Dr. Norwood's medical source opinion indicated that Bagwell could lift and carry fifteen pounds frequently and twenty pounds occasionally and had no postural or environmental limitations. (R. at 356-358.) The ALJ observed that Dr. Norwood's neurological assessment was consistent with Plaintiff's ability to return to work on March 30, 2006. (R. at 24.) Thus, the ALJ gave greater weight to Dr. Norwood's opinion. (*Id.*) The court finds that, in assessing the medical evidence, ALJ Stout adequately stated with particularity the weight he gave the different medical opinions and the reasons therefor. *MacGregor*, 786 F.2d at 1053.

## C. Pain Allegations

Bagwell also contends that ALJ Stout erred by failing to properly evaluate her subjective allegations of pain. (Doc. 10, pp. 9-11) In *Holt v. Sullivan*, the Eleventh Circuit "articulated the 'pain standard,' which applies when a disability claimant attempts to establish disability through his own testimony of pain or other subjective symptoms."

15

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt*, 921 F.2d 1221 (11th Cir. 1991)).  The pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising form that condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.

*Id*.  When a plaintiff alleges disabling pain and other symptoms, "the ALJ must clearly articulate explicit and adequate reasons for discrediting the [plaintiff's] allegations of completely disabling symptoms."  *Dyer*, 395 F.3d. at1210 (internal citations and quotation marks omitted).  "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court." *Id.*.  "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court] to conclude that the ALJ considered [the plaintiff's] medical condition as a whole."  *Id.*

In the present case, ALJ Stout considered the evidence of the record and concluded that Bagwell's medically determinable impairments could "reasonably be expected to produce the symptoms she alleged, but her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible."  (R. at 22.)  While the ALJ's determination borders on being conclusory, the court is satisfied that this finding is explicit and adequate to discredit Bagwell's testimony and supported by substantial evidence.  *Heppell-Libsansky v. Commissioner of Social Security*, 170 Fed. Appx. 693, 698-699 (11th Cir. 2006) (finding sufficient the ALJ's determination, after

review of 10 medical records and consideration of plaintiff's testimony, that plaintiff's description of her symptoms was "considerably more limited and restricted than [was] established by the medical evidence, her own contemporaneous statements to treating sources, and medical source opinions"). ALJ Stout specifically noted that Dr. Long's RFC assessment post-dated Bagwell's return to work; thus, the implication that ALJ Stout discredited Bagwell's representations to her treating physician, as well as Dr. Long's assessment, is obvious to the court.[8] *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995)("[W]here proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."). Accordingly, the court finds that ALJ Stout's assessment of credibility with respect to the severity of Bagwell's pain and limitations was supported by substantial evidence.

## V. CONCLUSION

Applying the standard of review outlined above, and upon consideration of the record as a whole, the memoranda of the parties, and the decision of the Commissioner, the court is of the opinion that the Commissioner's decision is due to be affirmed. An

---

[8]The court notes that Dr. Long treated Bagwell on 3 occasions after her return to work and before his execution of the Residual Functional Capacity Questionnaire. (R. at 479-482). Records related to these visits do not reflect Bagwell's changed work status, and, in fact, on two occasions the records affirmatively noted Bagwell's denial of a "change in family history or occupation." (*Id.*)

17

order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 30th day of March, 2010.

_____
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE